UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

      Plaintiff,

  v.          Case No. 21-CR-198

JEAN JASME, et al.,

      Defendants.

## RECOMMENDATIONS AND ORDERS

1. **Background**

Jean Jasme is charged with conspiracy to distribute cocaine, "intending, knowing, and having reasonable cause to believe that such controlled substance would be unlawfully imported into the United States" (ECF No. 38-2 at 2), and related crimes (ECF No. 38-2 at 3-4, 6).

2. **Severance**

Jasme seeks severance under Fed. R. Crim. P. 14 from his co-defendants, Alex Mompremier and another identified only as John Doe #1. (ECF No. 140.) He states that both of these co-defendants gave statements implicating him. Therefore, unless his co-defendants testify, a joint trial where their statements implicating him were introduced

would violate his Sixth Amendment right to confront his accusers. (ECF No. 140 at 2); *Bruton v. United States*, 391 U.S. 123, 88 S. Ct. 1620, 20 L.Ed.2d 476 (1968).

The government responds that, if it seeks to introduce either co-defendant's statement, it will redact any reference to Jasme and seek limiting instructions. (ECF No. 149 at 6-7 (citing *Richardson v. Marsh*, 481 U.S. 200 (1987); *United States v. Jett*, 908 F.3d 252, 275 (7th Cir. 2018); *United States v. Lyle*, 919 F.3d 716, 733-34 (2d Cir. 2019). In reply, Jasme states that redaction may prove sufficient, but asks that the court reserve ruling until the government conclusively decides on a course of action. (ECF No. 156.)

"In all but the 'most unusual circumstances,' the risk of prejudice arising from a joint trial is 'outweighed by the economies of a single trial in which all facets of the crime can be explored once and for all.'" *United States v. Spagnola*, 632 F.3d 981, 987 (7th Cir. 2011) (quoting *United States v. Alviar*, 573 F.3d 526, 539 (7th Cir. 2009)). "There is a strong preference that co-conspirators be jointly tried, particularly where, as here, they were indicted together." *Id.* Severance under Rule 14 is not required merely because a defendant may be able to argue that he will have a better chance of acquittal if he is tried alone; rather, severance is required only if the defendant cannot receive a fair trial absent severance. *United States v. Stokes*, 211 F.3d 1039, 1042 (7th Cir. 2000); *see also United States v. White*, 737 F.3d 1121, 1133 (7th Cir. 2013) (citing *United States v. Berg*, 714 F.3d 490, 496 (7th Cir. 2013)). It is the defendant's burden to prove that severance under Rule 14 is appropriate. *United States v. Moya-Gomez*, 860 F.2d 706, 767-68 (7th Cir. 1988).

Although the devil is in the details when it comes to whether redactions of a co-defendant's statements are sufficient to comply with the Sixth Amendment's confrontation clause, for present purposes Jasme has failed to show that he cannot receive a fair trial if tried with his co-defendants. Because it is reasonable to expect that there are procedures that will ensure that Jasme will receive a fair trial, the court must deny his motion to sever. Jasme remains free to challenge at trial the sufficiency of any proposed procedure.

3. **First Motion to Dismiss**

Jasme argues that the superseding indictment must be dismissed because "the government fails to establish that Jasme's extraterritorial acts had, or were intended to have, any impact whatsoever upon the United States." (ECF No. 141 at 3.) The indictment also "contains no specific averments demonstrating defendants acted with the intent or knowledge to import cocaine into the United States." (ECF No. 141 at 4.) Finally,

> [t]he indictment does not contain sufficient particularity in its averments as would enable Jasme to plead former jeopardy since 1) it does not reference a specific time or place where he allegedly intended or knowingly conspired to import cocaine into the United States; 2) it does not identify a person or entity in the United States to whom a controlled substance was imported; 3) it provides no details as to how the extraterritorial manner and means of distribution alleged in this case impacted the United States; and 4) as to count 1, provides no information concerning the formation or conduct of the alleged conspiracy.

(ECF No. 141 at 5.) Without this information, Jasme argues, not only will he be unable to plead double jeopardy against a subsequent prosecution, but he is unable to prepare a defense in this case. (ECF No. 141 at 5.)

"Challenging an indictment is not a means of testing the strength or weakness of the government's case, or the sufficiency of the government's evidence." *United States v. Moore*, 563 F.3d 583, 586 (7th Cir. 2009) (quoting *United States v. Todd*, 446 F.3d 1062, 1067 (10th Cir. 2006)). Yet this is what Jasme seeks to do when he argues that the superseding indictment fails to contain "specific averments" demonstrating that he acted with the requisite intent.

The superseding indictment specifically alleges that Jasme (and his co-conspirators) distributed five kilograms or more of cocaine "intending, knowing, and having reasonable cause to believe that such controlled substance would be unlawfully imported into the United States." (ECF No. 39, Counts One, Two, and Five, ¶ 1.) It is sufficient that the superseding indictment alleges that Jasme acted with the required intent; it need not set forth any specific fact supporting that allegation. Whether the government will be able to prove the elements of the charged offenses, including this *mens rea* element, is a matter for trial rather than a motion to dismiss.

"An indictment is legally sufficient if it (1) states all the elements of the crime charged; (2) adequately informs the defendant of the nature of the charges so that he may prepare a defense; and (3) allows the defendant to plead the judgment as a bar to

any future prosecutions." *United States v. White*, 610 F.3d 956, 958 (7th Cir. 2010) (citing Fed. R. Crim. P. 7(c)(1); *United States v. Smith*, 230 F.3d 300, 305 (7th Cir. 2000)). Tracking the language of the statutes, as the superseding indictment does here, is usually sufficient to comply with the Fifth and Sixth Amendments and Fed. R. Crim. P. 7(c). *United States v. Maez*, 960 F.3d 949, 965 (7th Cir. 2020).

Beyond that, the conspiracy charge refers to a specific timeframe—February 2019 through March 22, 2022—and specific locations—"Columbia, Haiti, the Dominican Republic, the Bahamas, and elsewhere." (ECF No. 39 at 1.) This is sufficient. *See United States v. Lorenzana-Cordon*, 130 F. Supp. 3d 172, 177 (D.D.C. 2015). The other charges also allege specific dates and locations.

Co-conspirators need not be named in an indictment. *United States v. Payton*, 328 F.3d 910, 911 (7th Cir. 2003); *United States v. Fort*, No. 10 CR 1057, 2011 U.S. Dist. LEXIS 96048, at *7 (N.D. Ill. Aug. 26, 2011). For many reasons, an indictment alleging a conspiracy under 18 U.S.C. § 963 need not allege how it impacted the United States, the most significant of which is that proof of impact on the United States is not an element of the offense. Likewise, an indictment need not provide information about the formation or conduct of the alleged conspiracy. *See United States v. Cox*, 536 F.3d 723, 728 (7th Cir. 2008). The superseding indictment contains "enough factual particulars so the defendant is aware of the specific conduct at issue," *White*, 610 F.3d at 959, and therefore

is not subject to dismissal. The court will recommend that the motion to dismiss the superseding indictment (ECF No. 141) be denied.

   4. **Second Motion to Dismiss**

Jasme asks the court to dismiss the superseding indictment "with prejudice because the torture and abuse inflicted upon the Defendant is shocking to the conscience." (ECF No. 142 at 1.) He alleges that he "was kidnapped by Haitian National Police" on the afternoon of March 22, 2022. (ECF No. 142-1, ¶ 1.) He was transported to a police station where he was met by agents from the United States Drug Enforcement Administration. (ECF No. 142-1, ¶ 3.) When Jasme asked why he was arrested, a DEA agent showed him the initial indictment in this action. (ECF No. 142-1, ¶ 3.) The agent said that, unless Jasme cooperated, he would be taken to Wisconsin, a place that is "full of racists" and has "no black people" and where he "would be tortured in prison" because he is a black man. (ECF No. 142-1, ¶ 3.)

Jasme told agents that his diabetes prevented him from eating the food he was served. (ECF No. 142-1, ¶ 4.) He asked for his diabetes and prostate medications, which he had with him when he was "kidnapped." (ECF No. 142-1, ¶ 4.) Agents denied his request for his medication, as well as his requests to contact his family or lawyer. (ECF No. 142-1, ¶ 4.)

Jasme was placed in a seven by nine foot holding cell. (ECF No. 142-1, ¶ 5.) The cell had only bars on the window, thus allowing in insects that were attracted to the

area by the large garbage bin that was just outside the window. (ECF No. 142-1, ¶ 5.) He remained there for the next 16 days during which time he wore the same clothes, had only a thin piece of foam on which to sleep, had to pay for bottled water, had to be escorted from his cell to use the toilet, and suffered many insect bites. (ECF No. 142-1, ¶ 5.) The cell was hot during the day and cold at night. (ECF No. 142-1, ¶ 5.)

On March 24, he collapsed to the floor of his cell and could barely move for 12 to 14 hours. (ECF No. 142-1, ¶ 6.) Fearing he was going to die, he asked the jailer to get help. (ECF No. 142-1, ¶ 6.) The jailer said there was nothing they could do because he was in DEA custody. (ECF No. 142-1, ¶ 6.)

Jasme asked the jailer to contact a specific inspector, and the jailer attempted to do so, but could not locate the inspector. (ECF No. 142-1, ¶ 6.) The next day, the inspector arrived and contacted the DEA. (ECF No. 142-1, ¶ 7.) The DEA agents arrived with medical personnel, and Jasme told them he was in severe pain, could not urinate, and had been without food or medicine for four days. (ECF No. 142-1, ¶ 7.) The medical personnel sought to give Jasme an injection, but he refused until he was able to consult with his personal doctor. (ECF No. 142-1, ¶ 7.) Agents got Jasme's physician on the phone, who "advised against the shot" and said that Jasme needed his medications. (ECF No. 142-1, ¶ 7.) One of the medical providers wrote prescriptions, after which Jasme received his medications and soon "started to feel a little better." (ECF No. 142-1, ¶ 7.)

On April 7, 2022, Jasme was transported to the United States. (ECF No. 142-1, ¶ 9.) During his time in Haitian custody he was not allowed to contact anyone, including his attorney, and was never brought before a judge. (ECF No. 142-1, ¶ 8.)

"[T]he manner in which a defendant is brought to trial does not affect the ability of the government to try him." *United States v. Mompremier*, No. 21-CR-198, 2022 U.S. Dist. LEXIS 180734, at *4 (E.D. Wis. July 28, 2022) (quoting *Matta-Ballesteros v. Henman*, 896 F.2d 255, 260 (7th Cir. 1990)). "The *Ker-Frisbie* doctrine 'holds that a criminal defendant cannot defeat personal jurisdiction by asserting the illegality of the procurement of his presence in the relevant jurisdiction — here, the United States.'" *United States v. Mompremier*, No. 21-cr-0198, 2022 U.S. Dist. LEXIS 178434, at *4 (E.D. Wis. Sep. 30, 2022) (quoting *U.S. v. Arbane*, 446 F.3d 1223, 1225 (11th 2006)); *see also Ker v. Illinois*, 119 U.S. 436, 7 S. Ct. 225, 30 L. Ed. 421 (1886); *Frisbie v. Collins*, 342 U.S. 519, 72 S. Ct. 509, 96 L. Ed. 541 (1952)); *United States v. Alvarez—Machain*, 504 U.S. 655 (1992).

"Although the Second Circuit recognized an 'outrageous conduct' or 'shock-the-conscience' exception to the *Ker-Frisbie* doctrine in *United States v. Toscanino*, 500 F.2d 267 (2d Cir. 1974), [the Court of Appeals for the Seventh Circuit has] declined to follow the exclusionary rule grounds of *Toscanino* and [has] questioned its continuing constitutional vitality." *United States v. Mitchell*, 957 F.2d 465, 470 (7th Cir. 1992) (citing *Matta-Ballesteros*, 896 F.2d at 262).

The Seventh Circuit having rejected the foundation of Jasme's argument, dismissal of the indictment is not appropriate. Because there is no legal basis for his motion, Jasme is not entitled to an evidentiary hearing. Jasme's request for an evidentiary hearing is alternatively denied because he failed to comply with Crim. L.R. 12(c).

Jasme's motion to dismiss would fail even if the court accepted all of his allegations as true and could conclude that conduct that "shocks the conscience," *Rochin v. California*, 342 U.S. 165, 172 (1952), or is "shocking to the universal sense of justice" *United States v. Russell*, 411 U.S. 423, 432 (1973), is an exception to the *Ker-Frisbie* doctrine. While Jasme's allegations plausibly suggest *tortious* conduct if assessed under the laws of the United States, his attempt to characterize it as *torturous* is hyperbolic and unavailing. Days-long delays in medical care, temporary deprivations of medications, meals that do not meet medical needs, cramped cells, inadequate mattresses, insect infestation, and temperature extremes are unfortunately common complaints in jails across the United States. This is not to suggest that such circumstances are acceptable. But the frequency with which courts face such complaints from pretrial detainees underscores the fact that Jasme was not subject to anything so extreme as to be "close to the rack and the screw" such that it would rise to the level of shocking the conscience, *see Rochin*, 342 U.S. at 172; *see also United States v. Cordero*, 668 F.2d 32, 37 (1st Cir. 1981) (finding that the *Toscanino* exception did not apply to defendants who were insulted,

slapped, pushed, poorly fed, forced to sleep in a chair or "on the floor and had to huddle up in a corner' to avoid the splashing of urine coming from prisoners in other cells").

Moreover, although the court accepts that Jasme was in custody at the request of DEA officials, he was nonetheless in Haitian custody pending expulsion from the country. There is no evidence that the conditions he experienced were substantively different than those experienced by other inmates in the jail. The conditions of a Haitian jail cannot be imputed to the United States. There is not, for example, any evidence that Jasme's conditions were the result of decisions by DEA officials. To the contrary, when Jasme sought medical care, officials from the United States provided it and he soon felt better.

Jasme's good health and mood are supported by a photo of him taken outside a plane immediately before his departure from Haiti. (ECF No. 147-1.) The photo shows Jasme, seemingly clean and well-nourished, smiling broadly, his hands cuffed in front of him, with at least five law enforcement officials from the DEA and the Haitian National Police standing beside him. His appearance is inconsistent with what one would expect of a person who had supposedly just endured more than two weeks of torture. Because the circumstances of his arrest and detention in Haiti do not deprive the court of jurisdiction, the court will recommend that his second motion to dismiss the superseding indictment be denied.

### 5. Motion for Disclosure

Jasme asks the court to order the government to produce certain items related to his arrest and detention in Haiti, which he believes will support his motion to dismiss under *Toscanino*. (ECF No. 143.) Because Jasme's argument in support of dismissal is not recognized in the Seventh Circuit, the conduct occurring in Haiti would not support a dismissal of the charges against him, and therefore the requested items are not relevant.

Jasme also argues that the items must be disclosed under *Brady v. Maryland*, 373 U.S. 83 (1963). The government's obligations under *Brady* are self-executing; no motion is required. *See Strickler v. Greene*, 527 U.S. 263, 280 (1999). Although he refers to the items as potentially being relevant to a motion to suppress (ECF No. 143 at 5-6), he does not identify any evidence that would plausibly be subject to suppression. *Cf. United States v. Verdugo-Urquidez*, 494 U.S. 259, 274-75 (1990) (discussing the application of the Fourth Amendment to searches outside the United States). And insofar as he may be suggesting that evidence that his arrest was unlawful could lead to dismissal of the charges against him, the argument fails. *See Immigration & Naturalization Serv. v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984) ("The 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred.").

Finally, Jasme argues that the items must be disclosed under Fed. R. Crim. P. 16(a)(1)(E). But he failed to comply with Crim. L.R. 16(b), and therefore his motion is denied.

**IT IS THEREFORE ORDERED** that Jean Jasme's "Motion to Sever Pursuant to Fed. R. Crim. P. 14" (ECF No. 140) is **denied**.

**IT IS FURTHER RECOMMENDED** that Jasme's "Motion to Dismiss Superseding Indictment" (ECF No. 141) be **denied**.

**IT IS FURTHER RECOMMENDED** that Jasme's "Motion to Dismiss" (ECF No. 142) be **denied**.

**IT IS THEREFORE ORDERED** that Jean Jasme's "Motion for Disclosure" (ECF No. 143) is **denied**.

**IT IS FURTHER ORDERED** that, in accordance with 28 U.S.C. § 636(b)(1)(A), (B) and (C) and Fed. R. Crim. P. 59(a) and (b)(2), written objections to any order or recommendation herein or part thereof shall be filed within fourteen days of the date of service of this recommendation and order or prior to the Final Pretrial Conference, whichever is earlier. Failure to file a timely objection with the district court will result in a waiver of a party's right to appeal.

Dated at Milwaukee, Wisconsin this 3rd day of April, 2024.

WILLIAM E. DUFFIN
U.S. Magistrate Judge