UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                            Case No. 21-cr-0198-bhl-3

JEAN ELIOBERT JASME,

        Defendant.

---

## ORDER

---

Defendant Jean Eliobert Jasme has filed objections to the Recommendations and Orders of Magistrate Judge William E. Duffin denying Jasme's motions to dismiss the superseding indictment. For the reasons that follow, the Court adopts Judge Duffin's recommendations and will deny Jasme's motions to dismiss.

### FACTUAL AND PROCEDURAL BACKGROUND

On September 28, 2021, a grand jury returned a four-count indictment charging Jasme and two co-defendants with drug and firearms offenses. (ECF No. 1.) Jasme is charged in counts one, two, and three. (*Id*. at 1–4.) Count One alleges that Jasme conspired with others to distribute 5 kilograms or more of cocaine, intending, knowing or having reasonable cause to believe that the cocaine would be unlawfully imported into the United States, in violation of 21 U.S.C. §§ 959(a), 963, and 960(b)(1)(B). (*Id*. at 1–2.) Count Two alleges that he distributed 5 kilograms or more of cocaine, intending, knowing, or having reasonable cause to believe that the cocaine would be unlawfully imported into the United States, in violation of 21 U.S.C. §§ 959(a), 960(b)(1)(B), and 18 U.S.C. § 2. (*Id*. at 3.) Count Three alleges that he carried firearms during and in relation to the drug trafficking crimes alleged in Counts One and Two, in violation of 18 U.S.C. § 924(c)(1)(A)(i). (*Id*. at 4.) The offenses are each alleged to have "begun outside the jurisdiction of any particular State or district of the United States." (*Id*. at 1, 3– 4.)

On March 22, 2022, at the request of American authorities, Jasme was taken into custody in Port-au-Prince, Haiti, by the La Brigade de Lutte contre le Trafic de Stupéfiants (BLTS), the Haitian anti-narcotics police unit. (ECF No. 183 at 2.) Jasme was then placed in the custody of

Haitian authorities at the BLTS police station. (ECF No. 142-1 at 1.) The BLTS allowed Drug Enforcement Special Agent (DEA SA) Matthew Taylor, DEA SA Brook Beaudreau, and GS Leo Hawkins to interview the defendant. (ECF No. 183 at 2; ECF No. 142-1 at 1–2.) Beaudreau read the defendant his Miranda rights. (ECF No. 183 at 2; ECF No. 142-1 at 2.)

According to the defendant, when he asked why he was arrested, Taylor showed him the indictment from Wisconsin by using a tablet. (ECF No. 142-1 at 1.) Taylor told him to cooperate, or he was going to be taken to Wisconsin, a state "full of racists" where there are no Black people and where he would be tortured in prison because he is a Black man.[1] (*Id.* at 1–2.) Jasme alleges that the DEA agents refused to allow him access to an attorney. (*Id.* at 2.) He also claims he was denied access to medication he needed to treat his diabetes and prostate, and that the authorities refused to allow him to call his family so they could bring him his medications and food. (*Id.*) Jasme also alleges that he was housed in a small cell, with an estimated dimension of 7 feet by 9 feet that had windows with bars but no glass and no heat or air conditioning. (*Id.*) Jasme further claims the cell was infested with mosquitoes and other tropical insects that bit him all over his body. (*Id.*) The cell was cold at night and hot during the day and Jasme was provided with one sheet and a half-inch thick piece of foam to sleep on with no mattress, pillow, or blanket. (*Id.*) There was no toilet in the cell, so Jasme had to wait for an escort to take him to the bathroom. (*Id.*) Jasme claims he often urinated into an empty water bottle. (*Id.*) Jasme was not allowed to go outside or get any exercise. (*See id.*)

Jasme claims he became ill on March 24, 2024. (*Id.*) He acknowledges, however, that U.S. Embassy representatives were able to facilitate obtaining his needed medication and, by March 25, 2022, within 72 hours of his arrest, he was feeling "a little better." (ECF No. 174 at 7; ECF No. 142-1 at 3.) Jasme also claims he was unable to communicate with anyone, including one of his lawyers, Jude Geffrard, who tried to visit Jasme but was told by a Haitian officer that the U.S. Embassy needed to approve the visit. (ECF No. 142-2 at 1.) There is no indication of whether Geffrard attempted to contact the U.S. Embassy as directed. (ECF No. 183 at 3.)

On April 7, 2022, Jasme was removed from his cell and taken to the Toussaint Louverture International Airport where his custody was transferred to DEA Agents. He was then flown to the Bahamas and then on to Milwaukee. (ECF No. 174 at 8.; ECF No. 183 at 3–4.) The government reports that Jasme was in Haitian custody for 16 days, the time it took for the Haitian government

---

[1] The government disputes that Special Agent Taylor made any of these statements. (ECF No. 183 at 2 n.1.)

to approve his expulsion from Haiti to the United States. (ECF No. 183 at 3.) While about to board the plane, Jasme was photographed and appears healthy, well-nourished, and smiling. (ECF No. 147-1.)

On November 8, 2022, a grand jury returned a five-count superseding indictment against Jasme and four co-defendants. (ECF No. 38-2.) The superseding indictment expanded the conspiracy's timeframe alleged in Count One, named two additional defendants, and alleged in Count Five that the defendant distributed 5 kilograms or more of cocaine, intending, knowing, or having reasonable cause to believe that the cocaine would be unlawfully imported into the United State, in violation of 21 U.S.C. §§ 959(a), 960(b)(1)(B), and 18 U.S.C. § 2. (*Id.* at 1, 6.)

On February 14, 2024, Jasme filed motions to dismiss arguing the superseding indictment was not legally sufficient and alleging that the government engaged in "outrageous conduct." (ECF No. 14; ECF No. 142 at 11.) After the parties briefed the motions, Magistrate Judge William E. Duffin issued a report, recommending that the Court deny the defendant's motions to dismiss. (ECF Nos. 160 & 161.) On April 15, 2024, Jasme file a *pro se* motion to appoint new counsel and on April 19, 2024, his then-appointed counsel, Thomas Erickson, filed his own motion to withdraw. (ECF Nos. 171 & 173.)[2] On April 22, 2024, with his motion to withdraw pending,

---

[2]Jasme has an extensive history of disagreements with appointed counsel and demands that they withdraw based on his dissatisfaction with their representation of him. To date, Jasme has received representation from 6 appointed attorneys (Federal Defenders Gabriela Leija and Craig Albee; Attorneys Daniel Sanders and Morgan Minter from the firm of Hart Powell SC; Attorney Thomas Erickson, and Attorney Jeffrey Jensen) and one attorney Jasme retained, Christopher Carson, whose representation was terminated on December 22, 2023. On April 10, 2022, Attorneys Leija and Albee entered notices of appearances for Jasme. (ECF Nos. 5 & 6.) On July 27, 2022, Attorney Carson filed a notice of appearance as Jasme's lawyer. (ECF No. 28.) Jasme was arraigned on November 22, 2022, on the superseding indictment and entered a not guilty plea. (ECF No.44.) That same day, Attorney Carson, argued a motion to withdraw that was stayed until successor counsel was retained. (*Id.* at 1.) On December 22, 2022, Attorneys Leija and Albee filed notices of appearances to again represent Jasme. (ECF Nos. 50 & 51.) On January 3, 2023, Jasme filed a *pro se* motion to appoint counsel different than Attorneys Leija and Albee. (ECF No. 54.) On January 4, 2023, the Judge Duffin denied the motion and noted that although indigent defendants have a right to counsel, they are not entitled to choose their attorneys. (ECF No. 55.) Judge Duffin also noted that Jasme was represented by two experienced and competent attorneys and had not presented good cause for the Court to consider the appointment of successor counsel. (*Id.*) On February 15, 2023, Attorneys Leija and Albee filed a motion to withdraw and appoint new counsel. (ECF No. 61.) At a hearing held on February 22, 2023, the Court granted the motion and ordered new counsel appointed to represent Jasme. (ECF No. 67.) On March 2, 2023, Attorneys Daniel Sanders and Morgan Minter filed notices of appearances. (ECF Nos. 68 & 69.) On July 27, 2023, during an in-person contact visit with the defendant at the Waukesha County Jail, Jasme demanded that Attorneys Sanders and Minter withdraw from his case. (ECF No. 106 at 4–5.) On August 9, 2023, the Court denied the motion to withdraw. (ECF No. 108.) On August 15, 2023, Attorneys Sanders and Minter filed a second motion to withdraw as counsel. (ECF No. 110.) A hearing was held on August 24, 2023, and the Court granted the second motion to withdraw and ordered replacement counsel. (ECF No. 113.) On September 5, 2023, Attorney Thomas Erickson filed a notice of appearance. (ECF No. 115.) On March 20, 2024, Attorney Erickson filed a motion to withdraw which was taken under advisement by the Court but ultimately granted. (ECF Nos. 152, 187.) Jasme is now represented by Attorney Jensen although Jasme has filed several *pro se* motions, including a *pro se* motion to withdraw pretrial motions and reply due to ineffective

Jasme's attorney filed written objections to Judge Duffin's rulings on the motions to dismiss. (ECF No. 174.) The government filed a response to the objections on May 2, 2024. (ECF. No. 183.) That same day, the Court held a hearing on the motion to withdraw and took the motion under advisement. The Court also gave Jasme seven days to decide whether to proceed with his then-appointed counsel or to accept appointment of new counsel, with the understanding that the Court was unlikely to allow further changes of counsel and Jasme would therefore be expected to work with whoever was appointed as replacement counsel. (ECF No. 184.) On May 8, 2024, Jasme's counsel filed a letter confirming that Jasme wanted new counsel. (ECF No. 186.) Accordingly, the Court granted the motion to withdraw and ordered the appointment of new counsel. (ECF No. 187.) Jasme's replacement counsel filed a notice of appearance on May 20, 2024, and the Court allowed him the opportunity to weigh in on the pending objections to the Magistrate Judge's Report. (ECF Nos. 188, 193–194.) On June 23, 2024, new counsel filed a reply addressing the report and Jasme's objections. (ECF No. 196.)

As discussed below, the Court adopts Magistrate Judge Duffin's recommendations and will deny Jasme's motions. In addition, because the Court resolves all disputed issues based solely on the pleadings, an evidentiary hearing is not necessary.

## STANDARD OF REVIEW

A district court reviews *de novo* "those portions of [a magistrate judge's] report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Crim. P. 59(b)(3). This "review requires the district [court] judge to decide the case based on an independent review of the evidence and arguments without giving any presumptive weight to the magistrate judge's conclusion." *Mendez v. Republic Bank*, 725 F.3d 651, 661 (7th Cir. 2013). The district court "makes the ultimate decision to adopt, reject, or modify" the magistrate judge's recommendation. *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 760 (7th Cir. 2009). Unchallenged portions of the report are reviewed only for clear error. *See Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999) (citing *Goffman v. Gross,* 59 F.3d 668, 671 (7th Cir. 1995)).

---

assistance of counsel. (ECF Nos. 188, 199.) Because Jasme is represented by Attorney Jensen, the defendant has no right to file his own *pro se* motions. *See United States v. Gwiazdzinski*, 141 F.3d 784, 787 (7th Cir. 1998). The Court will therefore deny Jasme's *pro se* motions as improperly brought. The Court again encourages Jasme to work with appointed counsel, who is known to the court and an experienced criminal trial attorney.

## ANALYSIS

In his report, Judge Duffin concluded that the superseding indictment was legally sufficient. (ECF No. 160 at 3–5.) Judge Duffin also rejected Jasme's argument that the indictment should be dismissed based on Jasme's treatment while in custody in Haiti, concluding that the Seventh Circuit does not recognize an "outrageous government misconduct" exception to the *Ker-Frisbie* doctrine and that the conduct even as alleged by Jasme does not rise to the level of "shocking the conscience." (*Id.* at 6–13.) Jasme objects to both conclusions. (ECF No. 174 at 4–5, 8–13.)

I.  **The Superseding Indictment Is Legally Sufficient.**

Jasme first claims that the superseding indictment lacks the requisite "statement of facts and circumstances" that "fairly import[]" knowledge to him that he knew that the cocaine would be brought to the United States. (ECF No. 174 at 4.) He contends the indictment provides him no "notice as to how or why [he] was involved in a scheme to transport cocaine" to the United States, (*id.*), other than an "unsupported conclusion that he did know." (ECF No. 196 at 3.) Jasme further insists that the indictment is insufficient because it does not "demonstrate that the extraterritorial acts of a defendant were intended to have an impact within the United States." (ECF No. 174 at 4.) Defendant's arguments misunderstand the law and are otherwise unavailing.

An indictment "must be a plain, concise, and definitive written statement of the essential facts constituting the offense charged. . . ." Fed. R. Crim. P. 7(c)(1). To be sufficient, an indictment must merely "identify the elements of the crime, fairly inform the defendant of the charge so that he may prepare a defense, and enable the defendant to evaluate any double jeopardy problems." *United States v. Phillips*, 645 F.3d 859, 861 (7th Cir. 2011.) Nothing more is required. *Id.* It is also well-established that in evaluating the sufficiency of an indictment, the court is to accept the allegations of the indictment as true. *United States v. Moore*, 563 F.3d 583, 586 (7th Cir. 2009). A motion to dismiss that challenges the adequacy of an indictment "is not a means of testing the strength or weakness of the government's case, or the sufficiency of the government's evidence." *Id.* (quoting *United States v. Todd*, 446 F.3d 1062, 1067 (10th Cir. 2002)).

Count One of the superseding indictment charges Jasme and his co-defendants with conspiring to distribute a controlled substance in violation of 21 U.S.C. § 963 and 960(b)(1)(B). (ECF No. 38-2 at 2.) A drug conspiracy charge is sufficient if it alleges: (1) a conspiracy to commit a drug offense, (2) the dates of the conspiracy, and (3) the substantive offense that was the object

of the conspiracy. *See United States v. Sweeney*, 688 F.2d 1131, 1140 (7th Cir. 1982). The superseding indictment covers all three elements. As to the first and third elements, the superseding indictment alleges that Jasme and his codefendants "knowingly and intentionally conspired together and with other persons known and unknown to the grand jury to distribute a controlled substance in Schedule II, intending, knowing, or having reasonable cause to believe that such controlled substance would be unlawfully imported into the United States," all in violation of 21 U.S.C. §§ 963 and 960(b)(1)(B). (ECF No. 38-2 at 2); *see* 21 U.S.C. § 959(a) (making it "unlawful for any person to manufacture or distribute a controlled substance . . . intending, knowing, or having reasonable cause to believe that such substance . . . will be unlawfully imported into the United States"). The superseding incitement also alleges the dates that the conspiracy was acting: "[b]eginning in or about February 2019, and continuing through March 22, 2022." (ECF No. 38-2 at 1.) The conspiracy charge is therefore sufficient.

Counts Two and Five allege violations of 21 U.S.C. § 959(a), which proscribes the extraterritorial manufacture or distribution of a Schedule I or II controlled substance knowing, intending or having reasonable cause to believe the controlled substance would be unlawfully imported into the United States. *See* 21 U.S.C. § 959(a). In both counts, the superseding indictment specifically alleges that Jasme distributed five kilograms or more of cocaine "intending, knowing, and having reasonable cause to believe that such controlled substance would be unlawfully imported in the United States." (ECF No. 38-2 at 3, 6.) Counts Two and Five thus not only track the language of Section 959(a) but also notify Jasme of the nature of the charges, the dates of the offenses, the location of the offenses, and the names of co-defendants.

Count Three—the firearms count—tracks the language of 18 U.S.C. § 924(c)(1)(A)(i) and notifies Jasme of the date of the offense, the location of the offense, and a specific description of the firearm. (*See id.* at 4.) "Simply tracking the language of the charging statue will generally suffice" for purposes of an indictment. *United States v. Brown*, No. 14-CR-82, 2015 WL 269205, at *3 (E.D. Wis. Jan. 21, 2015) (citing *United States v. Agostino*, 132 F.3d 1183, 1189 (7th Cir. 1997)).

The defense nevertheless argues that the government "must demonstrate that the extraterritorial acts of a defendant were intended to have an impact on the United States." (ECF No. 174 at 4.) Jasme is wrong on what is required in the indictment. The "impact" of Jasme's conduct upon the United States is not an element of any of the charged offenses. The indictment

alleges that Jasme acted with the requisite intent—it need not set forth any specific facts supporting that allegation. As Judge Duffin correctly noted, "[w]hether the government will be able to prove the elements of the charged offenses, including this *mens rea* element, is a matter for trial rather than a motion to dismiss." (ECF No. 160 at 4.) The Court concludes that the superseding indictment is legally sufficient and therefore, the defendant's motion to dismiss the superseding indictment for insufficiency will be denied.

II. **"Outrageous Government Conduct" Is Not a Basis for Dismissal in the Seventh Circuit.**

Jasme next argues that the charges against him must be dismissed with prejudice due to "the torture and abuse inflicted upon him" while he was in custody in Haiti. (ECF No. 174 at 5.) Judge Duffin cited the "*Ker-Frisbie* doctrine" and concluded that Jasme was precluded from challenging this Court's jurisdiction over him based on allegations that he was improperly brought into the United States. (ECF No. 160 at 8.) The magistrate judge also rejected Jasme's contention that because he was subject to "outrageous government conduct," the *Ker-Frisbie* doctrine did not apply. (*Id.* at 8–9.) Finally, Judge Duffin concluded that even if there was an "outrageous government conduct" exception to the doctrine, it would not help Jasme because the conduct alleged by Jasme did not "shock[] the conscience." (ECF No. 160 at 9–10.) The Court agrees.

The *Ker-Frisbie* doctrine holds that "the power of a court to try a person for crime is not impaired by the fact that he had been brought within the court's jurisdiction by reason of a 'forcible abduction.'" *United States v. Arbane*, 446 F.3d 1223, 1225 (11th Cir. 2006) (quoting *Frisbie v. Collins*, 342 U.S. 519, 522 (1952); *Ker v. Illinois*, 119 U.S. 436, 444 (1886)). Under this doctrine, once Jasme was transferred from Haiti to the Eastern District of Wisconsin, this Court is allowed to try him in this district for the offenses alleged in the indictment.

Jasme claims that the *Ker-Frisbie* doctrine does not apply when the government engages in outrageous conduct. (ECF No. 174 at 8.) As Judge Duffin noted, the Seventh Circuit has declined to recognize an "outrageous government conduct" defense. (ECF No. 160 at 8–9); *see also United States v. Smith*, 792 F.3d 760, 768 (7th Cir. 2015) ("[W]e do not recognize outrageous government conduct as cause for dismissing an indictment"); *United States v. Stallworth*, 656 F.3d 721, 730 (7th Cir. 2011) ("Outrageous government conduct is not a defense in this circuit."); *United States v. White*, 519 F.3d 342, 346 (7th Cir. 2008) ("[T]his circuit clearly and consistently has refused to recognize any defense based on . . . 'outrageous government conduct.'"). While the Second Circuit has apparently done so, that is not the law in the Seventh Circuit. *See United States*

*v. Mitchell*, 957 F.2d 465, 470 (7th Cir. 1992) ("Although the Second Circuit recognized an 'outrageous conduct' or 'shock-the-conscience' exception to the *Ker-Frisbie* doctrine, we have declined to follow the exclusionary rule grounds . . . and have questioned its continuing constitutional vitality.") (internal citations omitted) (citing *Matta-Ballesteros v. Henman*, 896 F.2d 255, 262–63 (7th Cir. 1990)).

The defendant's reliance upon *United States v. Toscanino*, 500 F.2d 267 (2d Cir. 1974), is misplaced. (ECF No. 174 at 8.) In *Toscanino*, the defendant was kidnapped from Uruguay by American agents in defiance of the laws of the country and allegedly tortured. *Toscanino*, 500 F.2d at 268. The court held that due process "require[d] a court to divest itself of jurisdiction over the person of a defendant where it has been acquired as the result of the government's deliberate, unnecessary, and unreasonable invasion of the accused's constitutional rights." *Id.* at 275. The Second Circuit almost immediately narrowed its holding in *Toscanino*, explaining that the government misconduct exception applied only where the defendant could prove "torture, brutality and similar outrageous conduct." *United States ex rel. Lujan v. Gengler*, 510 F.2d 62, 65 (2d Cir. 1975).

As an initial matter, as previously noted, the Seventh Circuit has expressly declined to adopt *Toscanino*. *See, e.g, Mitchell*, 957 F.2d 465 at 470. Moreover, Judge Duffin correctly concluded that even if the Court recognized outrageous government conduct as an exception to the *Ker-Frisbie* doctrine, Jasme's treatment did not amount to torture. (*See* ECF No. 160 at 9–10.) Jasme objects to this conclusion, protesting that "the abuse inflicted upon Jasme is shocking to the conscience and in fact 'torturous.'" (ECF No. 174 at 11–12.) The Court again agrees with Judge Duffin. Even accepting Jasme's allegations as true, the conduct he alleges does not "shock the conscience." Jasme endured at most a few days delay in medical care, temporary deprivations of medication, meals that did not meet medical needs, a cramped cell, an inadequate mattress, insect infestation, and temperature extremes. Incarceration is rarely comfortable. Nowhere does the defendant allege that he was physically assaulted or even threatened with physical violence while awaiting his expulsion from Haiti. Although these circumstances may not be entirely acceptable, the defendant was not subjected to anything so extreme as to be close to "the rack and the screw" such that it would rise to the level of shocking the conscience. *See Rochin v. California*, 342 U.S. 165, 166, 172 (1952) (holding that forcing an emetic down a suspect's throat to induce vomiting to obtain evidence from the suspect violated the suspect's right to due process of law.) Jasme's

alleged mistreatment stands far removed from the conduct discussed in *Rochin*. Indeed, Jasme admits that after a few days officials provided him with his medication and when he asked for medical care, officials from the United States provided it to him and he felt better. (ECF No. 174 at 7; ECF No. 142-1 at 3.)

Finally, even if the conditions of his confinement in Haiti were poor and uncomfortable, those conditions were beyond the control of American authorities. *See United States v. Youseff*, 927 F. Supp. 673, 678 (S.D.N.Y. 1996) ("[T]he DEA can hardly be expected to monitor the conduct of representatives of each foreign government to assure that a request for extradition or expulsion is carried out in accordance with American constitutional standards.") (quoting *United States v. Lira*, 515 F.2d 68, 71 (2d Cir. 1975)). The Haitian authorities had exclusive responsibility for Jasme until he was turned over to the DEA at Toussaint Louverture International Airport on April 7, 2022. Prior to boarding the plane that would take him to the United States, Jasme was photographed where he appears healthy, well-nourished, and smiling, a seemingly incongruous affect for one allegedly having been tortured. (ECF No. 147-1.) The Court will therefore deny Jasme's motion to dismiss the indictment for governmental outrageous conduct.

## CONCLUSION

After a *de novo* review of the recommendations made by Judge Duffin under 28 U.S.C. §636(b)(1), the Court overrules Defendant's Objections, (ECF No. 174), and accepts the recommendation of Judge Duffin, (ECF Nos. 160 and 161). The Court further determines that because the issues raised by the defendant's motions can be determined on the pleadings, an evidentiary record is not necessary.

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Dismiss Superseding Indictment, ECF No. 141, is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss, ECF No. 142, is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's *pro se* motions to dismiss with prejudice for violation of Speedy Trial Act, ECF Nos. 211 & 216, are **DENIED** as improperly brought.

Dated at Milwaukee, Wisconsin on September 25, 2024.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge