UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

          Plaintiff,

v.                                                   Case No. 21-cr-0198-bhl-3

JEAN ELIOBERT JASME,

          Defendant.

## ORDER DENYING DEFENDANT'S PRO SE MOTIONS

      Almost four years ago, on September 28, 2021, a grand jury returned a four-count indictment against Defendant Jean Eliobert Jasme and two co-defendants alleging their involvement in an international drug trafficking conspiracy. (ECF No. 1.) On March 22, 2022, Jasme was arrested in Haiti by Haitian authorities, and the Haitian government later approved his expulsion from Haiti to the United States. (ECF No. 147 at 2–3.) On April 8, 2022, Jasme was arraigned, made his initial appearance, and entered not guilty pleas to the charges against him. (ECF No. 7.) On November 8, 2022, a grand jury returned a five-count superseding indictment, naming Jasme in four counts: Count One, which alleges he participated in an international cocaine-trafficking conspiracy in violation of 21 U.S.C. §§ 963, 959(a), and 960(b)(1)(B); Count Two, which alleges he engaged in international cocaine trafficking in violation of 21 U.S.C. §§ 959(a) and 960(b)(1)(B); Count Three, which alleges he carried a firearm during and in relation to drug-trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i); and Count Five, which alleges he engaged in international cocaine trafficking in violation of 21 U.S.C. §§ 959(a) and 960(b)(1)(B). (ECF No. 38 at 1–4, 6.)

      After years of proceedings, on May 27, 2025, Jasme and his defense counsel executed a written plea agreement in which Jasme agreed to waive prosecution by indictment and plead guilty to a single-count Information charging him with knowingly and intentionally conspiring to distribute a controlled substance knowing it would be unlawfully imported into the United States in violation of 21 U.S.C. §§ 959(a), 963, and 960(b)(2)(B). (ECF Nos. 285 & 286.) Pursuant to

Federal Rule of Criminal Procedure 11(c)(1)(C), the agreement provides a binding joint recommendation for a sentence of nine years' imprisonment. (ECF No. 286 at 21, ¶24.)

On June 6, 2025, the Court held an arraignment and plea hearing. (ECF No. 289.) Although Jasme has demonstrated proficiency in English throughout these proceedings, he was provided with an interpreter who spoke Haitian-Creole, his native language, to facilitate his understanding of the proceedings. (*Id.* at 1.) At the hearing, Jasme affirmed that he understood that he was agreeing to plead guilty to the charge in the Information and was then placed under oath. (ECF No. 304 at 6–8.) The Court then proceeded through its standard plea colloquy, informing Jasme of his rights, reviewing the terms of the plea agreement with him, and confirming that he understood the implications of the agreement, consistent with Rule 11 of the Federal Rules of Criminal Procedure.

Given Jasme's status as a citizen of Haiti, the immigration consequences of his guilty plea were specifically reviewed at the hearing. Jasme's counsel noted that Jasme had expressed concern regarding paragraph 33 of the plea agreement, which discusses the potential immigration consequences of his agreement to plead guilty. (*Id.* at 13.) Counsel explained that Jasme was concerned that by pleading guilty he might be waiving any due process rights he might have in a subsequent immigration proceeding. (*Id.*) Both defense counsel and counsel for the government confirmed that Jasme was not agreeing to automatically remove himself from the country after serving his sentence and that he would have the opportunity to raise any defenses to removal during any subsequent proceeding in immigration court. (*Id.*) Jasme was also informed that he was not waiving his procedural rights in immigration court through the plea agreement. (*Id.* at 12–13.) Jasme then stated he was willing to proceed with the plea hearing. (*Id.* at 14.)

Jasme agreed that he was competent and able to proceed with entering a guilty plea. (*Id.* at 15.) He specifically confirmed that although he was taking certain medications, he had refrained from taking those medications that day so that he could fully comprehend the proceedings. (*Id.*) After the Court again confirmed that Jasme was able and willing to proceed, Jasme agreed that he was competent and reiterated that was able to proceed. (*Id.* at 15–16.)

During its plea colloquy, the Court directed Jasme to paragraph 33 of the plea agreement.[1] (*Id.* at 29–32). The following is the Court's colloquy with Jasme regarding that paragraph and the immigration consequences of pleading guilty:

> THE COURT: In paragraph 33 of the plea agreement, there is a discussion of the immigration consequences of pleading guilty. You are not a US citizen, correct?
>
> INTERPRETER [translating for Jasme]: Yes, I am not a citizen.
>
> THE COURT: So under the law because you are not a US citizen, it's possible that you could be removed from the country, denied citizenship, and denied future admission to the United States as a result of pleading guilty.
> All of those decisions are made in a separate proceeding not part of this case. In paragraph 33, there is a disclosure that makes clear to you -- it is intended to make clear to you that there could be immigration consequences from you pleading guilty, but those are entirely separate from this case. Do you understand?
>
> INTERPRETER: Yes, I understand it now.
>
> THE COURT: And can you confirm for me on the record that you wish to plead guilty pursuant to the terms of this plea agreement regardless of what happens in the immigration case in the future?
>
> INTERPRETER: Well, it is this part -- It is this part that I had asked Mr. Jensen and Mr. Brady to correct this part because it says that it is included potential automatic -- potential automatic removal from the US. I still am concerned as soon as I am done with my prison time, I will not have the opportunity to see an immigration judge. I have de facto signed for my deportation, so I am concerned. That is how I understand it, but Mr. Brady told me no, that's not it. Mr. Jensen told me the no, no, that's not it. Even if I sign with this on this, I can -- I can fight it in immigration procedure because I told them -- I told them that and the problem with my eye did not start in Haiti. It started while I was in jail last year.
> It is -- It is from the negligence of the physicians in the prison that spent eight-months -- They never took me to see a doctor. And when I finally saw a doctor, they said it was too late, and I will not recover my eye.
> Now, I have another problem. The doctor said I have to stay in permanence treatment on the left eye. I have to receive permanent treatment on the eye, on the left eye,

---

[1] Paragraph 33 states as follows: "The defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, and the defendant understands that no one, including the defendant's attorney or the sentencing court, can predict to a certainty the effect of the defendant's conviction on the defendant's immigration status. The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences, including the potential for automatic removal from the United States." (ECF No. 286 at 24, ¶33.)

so that I don't lose the eye. I've explained to Mr. Brady and Mr. Jensen, I explained it to them the treatment in the hospital here we don't have those treatments in Haiti.

And secondly, Haiti doesn't have anybody right now. Everyone who has the means left Haiti. Therefore, the doctor said I have to stay permanently here until I die, so that I can receive the treatment for my eye.

So this is the part only that I had a problem with, and I can give credit to Mr. Brady. I can give credit to Mr. Jensen, and I will -- I know as far as I'm concerned -- As far as I'm concerned, this part I will not have a chance to see an immigration judge.

THE COURT: So Mr. Jasme, immigration is subject to a separate proceeding. It's not part of this case. What you need to understand is that by pleading guilty in this case, that could have some impact on your immigration case. I can't do anything today to -- to impact that -- that other case if and when it happens. It is a separate case.

I am not ordering you deported today. But what I do need you to understand is that by pleading guilty to a federal felony, that could have impact on your immigration case. You understand that?

INTERPRETER: Yes.

THE COURT: And do you want to proceed with pleading guilty under this plea agreement knowing that doing so could impact your immigration status when you're done serving your sentence?

INTERPRETER: Okay.

THE COURT: So you do wish to proceed?

INTERPRETER: Yes.

. . . .

THE COURT: So Mr. Jasme, the Court is ready to accept your plea. Do you now wish to enter a guilty plea consistent with the terms of this plea agreement?

INTERPRETER: Yes.

(ECF No. 304 at 29–32.)

At the conclusion of the hearing, the Court accepted Jasme's guilty plea, which the Court found to be both knowing and voluntary. (*Id.* at 32–33.) The Court also found that a factual basis existed for the plea. (*Id.* at 33.) The Court thus approved the plea agreement and noted that the Court was now bound to impose the jointly recommended sentence of nine years. (*Id.*)

Three days later, on June 9, 2025, the Clerk docketed two *pro se* letters from Jasme alleging that he had signed the plea agreement involuntarily. (ECF Nos. 291 & 292.) Both letters were

mailed *prior* to the plea hearing. (*See* ECF No. 291 at 2 (signed and dated May 31, 2025, with a mail stamp of June 5, 2025) and ECF No. 292 at 2 (signed and dated June 4, 2025, with a mail stamp of June 6, 2025).)

On June 15, 2025, more than a week after Jasme's plea had been accepted by the Court, Jasme mailed another *pro se* letter to the Court. (ECF No. 294.) In this correspondence, Jasme states that he does not wish to withdraw his guilty plea but wants changes to the deal. In particular, he would like the prosecutor "to amend the plea agreement to remove or place a correction upon 'Paragraph 33; Immigration consequences' – 'includ[ing] the potential for automatic removal from the United States.'" (ECF No. 294 at 1.) Jasme would also like his "left eye disability [] incorporated in the plea agreement." (*Id.*)

On June 26, 2025, the government filed a motion to strike requesting that Jasme's *pro se* submissions be stricken because he is represented by counsel. (ECF No. 295.) The government also argues that Jasme's unsworn *pro se* submissions are contradicted by his sworn statements during his plea colloquy. (*Id.* at 6.) And, the government notes, although Jasme does not wish to withdraw his guilty plea, his request for continued concessions from the government during the interval between plea and sentencing is improper, and his spurious claims about his understanding of selected provisions in his plea agreement that he deems undesirable do not warrant changing the deal that has been struck. (*Id.*)

On July 13, 2025, Jasme mailed another letter to the Court, confirming that he is "ok" with the nine-year period of incarceration he agreed to in the plea deal. (ECF No. 305 at 1.) Jasme complains, however, that he disagrees with paragraph 33 of the plea agreement. (*Id.*)

As explained below, the Court will strike Jasme's *pro se* submissions because he is represented by counsel. For the avoidance of doubt, the Court also confirms that the bases Jasme suggests for withdrawing or amending his plea agreement are without merit. Sentencing will proceed as set at the plea hearing.

## ANALYSIS

Under Federal Rule of Criminal Procedure 11(d)(2)(B), a defendant may withdraw his guilty plea at any time *before sentencing* if the defendant provides a "fair and just reason." The Seventh Circuit has elaborated that a guilty plea can be withdrawn only where the defendant shows actual or legal innocence, or if he can prove the guilty plea was not entered knowingly and voluntarily. *United States v. Mays*, 593 F.3d 603, 607 (7th Cir. 2010) (citations omitted). In his

*pro se* request to withdraw his guilty plea, Jasme contends his guilty plea was involuntary because he will be subject to removal from this country upon completion of his sentence and he would like to remain here to continue to receive medical attention. (ECF No. 292 at 1.) Jasme's contentions are not a basis for withdrawing his plea.

First, Jasme does not suggest that he is factually or legally innocent. Indeed, in later correspondence Jasme states that he wants to plead guilty and is satisfied with the jointly recommended sentence his counsel and the government have negotiated. He raises no questions about his actual or legal innocence. (See ECF Nos. 296, 305.) His complaint about the potential immigration consequences of his having pleaded guilty is completely independent of his guilt.

Second, the record precludes any finding that Jasme's guilty plea was entered unknowingly or involuntarily. The Court conducted a detailed colloquy with Jasme at the plea hearing and specifically found that he was entering a guilty plea that was both knowing and voluntary. (ECF No. 304 at 32–33.) The law deems the entry of a plea of guilty a formal and solemn step, where the defendant is placed under oath and admits his guilt after detailed questioning by the Court to ensure the entry of the plea is both knowing and voluntary. *See* Fed. R. Crim. P. 11(b); *Mays*, 593 at 607 (citing *United States v. Roque-Espinoza*, 338 F.3d 724,726 (7th Cir. 2003)) (answers to proper Rule 11 colloquy are presumed true, imposing a heavy burden on defendant and leaving the "fair and just" escape hatch "narrow"). The Rule 11 procedure was followed here and Jasme offers no basis now to question the Court's findings that he knowingly and voluntarily pleaded guilty.

Jasme's requests for changes to his plea deal related to the immigration consequences of his guilty plea do not support a finding that his guilty plea was entered unknowingly. At his plea hearing, the Court specifically informed Jasme that "because [Jasme] is not a U.S. citizen, it's possible that [he] could be removed from the country, denied citizenship, and denied future admission to the United States as a result of pleading guilty." (ECF No. 304 at 30.) These are the required disclosures set forth in Federal Rule of Criminal Procedure 11(b)(1)(O). After being informed of the potential immigration consequences, Jasme proceeded to enter his guilty plea.

While Jasme may want to change the immigration consequences of his guilty plea, those issues are beyond the Court's power to address and there is no question that he was informed of those consequences before pleading guilty. They are set forth in writing in the plea agreement that Jasme signed. (ECF No. 286 at 24, ¶33.) They were also the subject of specific discussions with

counsel before the hearing and with counsel and the Court at the hearing. During the hearing, defense counsel explained Jasme's expressed concern that he was waiving any due process that he might have in an immigration proceeding, and both defense counsel and the government confirmed that Jasme was not in fact making any such waiver. (ECF No. 304 at 13.) The Court also informed Jasme that "it's possible that you could be removed from the country, denied citizenship, and denied future admission to the United States as a result of pleading guilty" and that immigration decisions "are made in a separate proceeding not part of this case." (*Id.* at 30.) After pausing during the hearing to specifically discuss the issue, Jasme responded under oath that "Yes, I understand it now." (*Id.* at 30.)

Jasme's suggestion that the consequences of his having pleaded guilty be deleted from the plea agreement is a non-starter. The Court is without authority to grant Jasme any relief concerning his immigration status. As explained at the plea hearing, immigration proceedings are entirely separate from this criminal case.

Jasme's claim that he received "misadvi[c]e from [his] lawyer" about the immigration consequences of pleading guilty, (ECF No. 305 at 1), is also contradicted by the record. Jasme's case is not like *Padilla v. Kentucky,* 559 U.S. 356 (2010), in which the Supreme Court acknowledged that defense counsel has a duty not to provide incorrect immigration advice in connection with a plea agreement. In *Padilla*, the petitioner, a lawful permanent resident for over forty years, faced deportation after pleading guilty to drug distribution charges in Kentucky. *Id.* at 359. Padilla's attorney not only failed to inform him of the possibility of deportation but affirmatively told him (incorrectly) that because he had been in the country for so long, he "did not have to worry about his immigration status." *Id.* The Supreme Court held that the Padilla had "sufficiently alleged that his counsel was constitutionally deficient," and thus, to avoid constitutionally deficient representation, an attorney must inform his or her client of the risk of deportation due to a guilty plea. *Id.* at 374. The required disclosures concerning the immigration consequences of pleading guilty set forth in Rule 11(b)(1)(O) stem from the result in *Padilla*. Unlike the defendant in that case, however, Jasme was not given erroneous information about the consequences of his guilty plea. Counsel and the Court informed him that by pleading guilty he faced removal from the country, the denial of United States citizenship, and the denial of future admission to the country. That information was accurate. With this information in hand, Jasme agreed to proceed and entered a guilty plea.

A defendant "is normally bound by the representations he makes to a court during the colloquy." *Hutchings v. United States*, 618 F.3d 693, 699 (7th Cir. 2010) (citing *United States v. Loutos*, 383 F.3d 615, 619 (7th Cir. 2004)). In other words, "[a] defendant has no legal entitlement to benefit by contradicting himself under oath. Thus, when the judge credits the defendant's statements in open court, the game is over." *United States v. Stewart*, 198 F.3d 984, 987 (7th Cir. 1999) (citing *Anderson v. Bessemer City*, 470 U.S. 564, 573–74 (1985)). Jasme has pleaded guilty pursuant to a very generous plea deal that guarantees him a substantially below-guidelines sentence. He will be held to that advantageous deal. Jasme's *pro se* motion to withdraw or amend plea is denied and he is expected to meet with pretrial services to complete the presentence report.

Accordingly,

**IT IS HEREBY ORDERED** that the government's motion to strike, ECF No. 295, is **GRANTED** and Defendant's *pro se* submissions at ECF No. 291, 292, 294, 296, and 305 are **STRICKEN**.

**IT IS FURTHER ORDERED** that Defendant's *pro se* motion to withdraw or amend plea agreement, ECF No. 305, is **DENIED**.

Dated at Milwaukee, Wisconsin on July 25, 2025.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge